UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENNIS McCOY,<br>JOHN MAGLIOCHETTI,<br>and GERALD GRAY<br><br>　　　　　Plaintiffs,<br>　v.<br><br>CITY OF NEW HAVEN<br><br>　　　　　Defendant. | Case No. 3:15-cv-001532 (CSH)<br><br><br>December 5, 2016 |

**RULING ON MOTION TO DISMISS**

**HAIGHT, Senior District Judge:**

　　　　Plaintiffs Dennis McCoy, John Magliochetti, and Gerald Gray bring this action to challenge a random drug testing policy instituted for city employees by the Defendant City of New Haven. The City has filed a motion [Doc. 14] to dismiss all counts of the Plaintiffs' Complaint. This ruling resolves that motion.

**I.　　Facts**

　　　　The facts alleged by the Plaintiff in the Complaint are scant at best. Plaintiffs allege that they are employees of the City of New Haven in positions which do not require them to possess a Commercial Drivers License ("CDL"). Complaint, ¶ 1. Plaintiffs further allege that beginning in the fall of 2012, and continuing until the filing of the complaint, the Plaintiffs were required to submit to random drug testing. Plaintiffs assert that the random drug testing is not required by state or federal law. Complaint, ¶ 3. This caused plaintiffs "humiliation, embarrassment and emotional distress." Complaint, ¶ 4.

Count One of the Complaint alleges that these drug tests deprived the Plaintiffs of their right to be free of unreasonable and warrantless searches and seizures under the Fourth Amendment. Plaintiffs bring suit pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1988. Count Two of the Complaint alleges that the drug tests unreasonably intrude upon the physical seclusion and privacy of the Plaintiffs, presumably under state law. Count Three alleges that the random drug testing violates the Plaintiffs' state constitutional rights against warrantless searches and seizures under Article First, Section Seven of the Connecticut Constitution.

## II.     Motion to Dismiss Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that "a case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Furthermore, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* Finally, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, . . . may refer to evidence outside the pleadings." *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows parties to assert by motion the defense that the other party "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). In analyzing whether a plaintiff has stated a claim upon which relief can be granted, the court must accept as true all well-pleaded facts alleged in the complaint. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Claims set forth by the plaintiff in the complaint must be facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not need to put forth "detailed factual allegations" to survive a 12(b)(6) motion, but must involve more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" *Id.* (*quoting Twombly*, 550 U.S. at 555).

### III.    Analysis

####    A.    Exhaustion of Administrative Remedies

Defendant argues that the Plaintiffs, as members of the Parks, Recreation and Trees Department of the City of New Haven, are bargaining unit members of UE Local 222 CILU/CIPU, Local 71 Union, and as such are subject to a Collective Bargaining Agreement ("CBA") negotiated by the City of New Haven and their union. Defendant asserts that under the CBA, Plaintiffs are required to exhaust the grievance procedures outlined in the CBA before pursuing a claim in the courts. As Plaintiffs have not exhausted these administrative procedures, the Defendants assert that the Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) to adjudicate the dispute.

Plaintiffs argue that the CBA does not provide for a grievance mechanism for these circumstances because their grievances arise out of a Memorandum of Understanding ("MOU"), signed after the CBA, between the Defendant and their Union regarding drug testing, rather than the CBA itself. The CBA, which went into effect July 1, 2010, provides for random drug testing on any city employee holding a safety-sensitive position. The Memorandum of Understanding, dated November 25, 2014, modified the CBA's random drug testing provision to state that "[e]ffective upon the signing of this MOU, the City shall revert to random drug testing exclusively for CDL holders and shall no longer require random drug testing on safety sensitive positions." The MOU does not provide for a grievance procedure.  Plaintiffs note that Article 13, Section 1 of the CBA

provides that a grievance may only be filed for "any asserted violation of the specific terms or provisions of this Agreement." The Complaint in this case was filed on September 21, 2015, and alleges violations commencing in the fall of 2012. Thus, there are two periods the Court need consider. The first period extends from the onset of the drug testing in the fall of 2012 to the signing of the MOU. The second period extends from the signing of the MOU until the filing of the lawsuit.

During the first time period, the Plaintiffs were required to exhaust the grievance procedures under the CBA. Because the random drug test policy contained in the CBA included the Plaintiffs, and the CBA required parties to file grievances for matters concerning the CBA, Plaintiffs should have exhausted the grievance procedures before bringing suit in federal court. "It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union.... Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." *Gerlach v. City of Danbury*, 2012 WL 1032796 (D. Conn. Mar. 27, 2012) (quoting *Saccardi v. Bd. of Educ. of the City of Stamford*, 45 Conn.App. 712, 715–16 (Conn. App. Ct. 1997)). The CBA provided that the grievance procedures were necessary for "any asserted violation of the specific terms or provisions of this agreement." CBA, Article 13, Section 1. Under Article 38, Section 4, the CBA provided for the terms of the random drug testing policy. Thus, the random drug testing policy was a specific term of the agreement, and subject to the grievance policy.

Plaintiffs contend, however, that their complaint is pursuant to the MOU,[1] rather than the

---

[1]The Court notes that the Defendant, in its motion to dismiss, provided for the Court an incomplete version of the CBA, and an unsigned version of the MOU that appears to be a word document. The incomplete version of the CBA includes only provisions that the City of New

4

CBA, which provides that the City would only randomly test CDL holders for drugs, rather than all employees in a safety sensitive position, as per the terms of the CBA. Plaintiffs argued that they were therefore not subject to the grievance procedures provided in the CBA. This argument is only applicable to the second time period mentioned above: after the signing of the MOU and before the filing of the lawsuit. However, this interpretation of the MOU and CBA would eviscerate the intentions of the parties. To have in place a CBA with a grievance procedure that covers random drug testing, and then, by virtue of a MOU revising the random drug testing procedures only as to the question of who would be subject to the random drug testing, construe the CBA as no longer making random drug testing grievances subject to the grievance procedure, would be nonsensical. "The primary objective in contract interpretation is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'" *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091 (2d Cir. 1993) (quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). In this case, the MOU expressly refers to the CBA, and the random drug testing provision. The MOU is effectively a renegotiation of one term of the CBA, and does not mention grievance procedures. It does not seem likely that the parties intended to remove the random drug testing provision from the CBA's grievance procedures based on this change, which amends only one part of a several part random drug testing procedure contained in the CBA.

---

Haven has deemed relevant. Notably, it excludes several attached MOUs, apparent to the Court in the table of contents. Furthermore, the Court also cannot verify whether the MOU was ever put into place given that it was not provided an executed copy. However, the result is the same whether or not the MOU was ultimately signed and implemented, and neither party contends that the MOU was not implemented or contests its contents, so the Court will continue with the analysis despite the deficient quality of the evidence before it.

The Plaintiffs also argue that they were not required to exhaust grievance mechanisms before filing lawsuits because the CBA does not include a clear waiver of the right to litigate statutory and constitutional rights. Furthermore, the Plaintiffs argue that the CBA expressly reserves the rights of the members regarding drug testing where it states "[t]his policy does not constitute a waiver of the rights of members of the bargaining unit regarding drug testing protection provided by the United States or Connecticut Constitution or statutes." CBA, Article 38, Section 3(D). However, Defendants note that the express reservation clause regarding drug testing is in the section about drug testing based on reasonable suspicion, rather than the section related to random drug testing.

The Court is not persuaded by the waiver argument. First, the express reservation clause does not apply to random drug testing. Second, the cases cited by the Plaintiffs concern the right to bring suit for employment discrimination. *See, e.g., Rogers v. New York University*, 220 F.3d 73 (2d Cir. 2000) (suit under the ADA, FMLA, and state statutes); *Stevens v. Coach U.S.A.*, 386 F. Supp. 2d 55, 64 (D. Conn. 2005) (suit concerning discrimination and interference under the FMLA). Like the case at hand, in *Stevens v. Coach U.S.A.*, 386 F.Supp.2d 55, 64 (D. Conn. 2005), the grievance procedures in the CBA were limited to grievances arising out of the terms of the CBA. However, the complaint in *Stevens* concerned FMLA violations. *Id.* The CBA in *Stevens* made no mention of the FMLA. *Id.* Here, the question of drug testing arises directly out of the terms of the CBA, which explicitly covers random drug testing. Furthermore, courts, including the Second Circuit, have explicitly allowed unions to consent to drug testing on behalf of employees, and have upheld related grievance procedures. *See Brown v. New York City Transit Authority*, 112 F.3d 503, *1 (2d Cir. 1996) (unpublished opinion); *see also Ware v. City of Buffalo*, 186 F.Supp.2d 324 (W.D.N.Y. 2001) (holding that plaintiff could not facially challenge drug testing agreed to in CBA).

The Court finds that it lacks subject matter jurisdiction over Count One because the Plaintiffs were required to exhaust the grievance procedures delineated in the CBA negotiated by their union. The Court need not consider the second question of whether the Court should dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Court has decided that it lacks jurisdiction over Count One of the Complaint under Federal Rule of Civil Procedure 12(b)(1).

**B.     State Law Claims**

**1.     Count Two: Intrusion upon Plaintiffs' Physical Seclusion and Privacy**

Defendant also argues that Plaintiff's claim in Count Two of the Complaint that the Defendant unreasonably intruded upon the physical seclusion and privacy of the Plaintiffs is preempted by the Labor Management Relations Act ("LMRA"). Section 301 of the LMRA "governs claims founded directly on rights created by collective-bargaining agreement, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). If the Court were to find that the state law claim was preempted by the LMRA, the Court would be deprived of jurisdiction because "[b]efore bringing [an action under LMRA § 301], the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." *Dougherty v. American Telephone & Telegraph Company*, 902 F.2d 201, 203 (2d Cir. 1990). Effectively, "where the resolution of a state-law claim depends on an interpretation of the collective bargaining agreement, the claim is preempted." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994) (*citing Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)).

To establish whether the resolution of the intrusion on privacy claim depends on an interpretation of the CBA, the Court turns to the elements of an intrusion on privacy claim in the

state of Connecticut. Under current Connecticut law, the courts look to the Restatement to determine if an individual is liable for the tort. *Spears v. Cardinal Health 200, LLC*, 2016 WL 5173210, *2 (Conn. Super. Ct. August 17, 2016). The Restatement (Second) of Torts provides, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." 1 Restatement (Second), Torts § 652A (1977).

In the course of litigating this state law claim, a court would have to turn to the CBA to evaluate whether the intrusion would be highly offensive to a reasonable person, given that the CBA, negotiated on behalf of the Plaintiffs by their union, appears to consent to the random drug testing. As noted *supra*, the Plaintiffs were required to bring their complaint to through the grievance processes outlined in the CBA before bringing any claim to federal court under LMRA § 301. Count Two of the Complaint is therefore dismissed.

### 2. Count Three: Violation of State Constitution's Prohibition of Unreasonable and Warrantless Searches and Seizures

Defendant requests that the Court dismiss Count Three of the Complaint, despite providing no argument asking that it do so. Instead, the Motion to Dismiss ends after the discussion on Count Two of the Complaint. However, the Court will consider its own subject matter jurisdiction sua sponte because "federal courts are under an independent obligation to examine their own jurisdiction." *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *see also McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) ("Whether a federal court has subject matter jurisdiction is a question that may be raised at any time . . . by a court sua sponte.") (internal quotation marks omitted)).

Count Three alleges that the Defendant subjected the Plaintiffs to unreasonable and

warrantless searches and seizures in violation of Article First, § 7, of the Connecticut Constitution. Article First, § 7 of the Connecticut Constitution "closely resembles" the Fourth Amendment to the United States Constitution. *State v. Barton*, 219 Conn. 529, 540 (Conn. 1991). The jurisprudence concerning the state constitutional provision, like its Fourth Amendment counterpart, holds that searches and seizures that are conducted after obtaining consent are reasonable. *See State v. Brunetti*, 279 Conn. 39, 46–47 (Conn. 2006). Like the tort claim discussed supra, whether or not the Plaintiffs consented to the random drug testing necessarily relies heavily on the terms of the CBA. As such, this count is also preempted by the LMRA. Plaintiffs did not exhaust their administrative remedies under the CBA, and as such, the count must also be dismissed.

**IV.     Conclusion**

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 14] is GRANTED. Additionally, pursuant to the Court's sua sponte analysis, Count Three of the Complaint is also DISMISSED.

It is SO ORDERED.

This Ruling and Order are WITHOUT PREJUDICE to such remedies as Plaintiffs may seek in grievance procedures under the CBA or before the courts of Connecticut.

Dated: New Haven, Connecticut
December 5, 2016

                                        /s/ *Charles S. Haight, Jr.*
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge